Nos. 23-1083 and 23-1084

_____

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

SGCI HOLDINGS III LLC, TEGNA INC.,
AND CMG MEDIA CORPORATION, APPELLANTS

*v.*

FEDERAL COMMUNICATIONS COMMISSION, APPELLEE
_____

IN RE SGCI HOLDINGS III LLC, TEGNA INC.,
AND CMG MEDIA CORPORATION, PETITIONERS
_____

## OPPOSITION TO EMERGENCY MOTION TO EXPEDITE
## AND CONSOLIDATE
_____

Andrew J. Schwartzman                Arthur V. Belendiuk
4000 Cathedral Avenue, N.W.          Smithwick & Belendiuk, P.C.
Apt. 617B                            5028 Wisconsin Ave. N.W.
Washington, D.C. 20016               Suite 301
                                     Washington, DC 20016

## OPPOSITION TO EMERGENCY MOTION
## TO EXPEDITE AND CONSOLIDATE

Proposed Intervenors/Respondents The Communications Workers of America (including the NewsGuild-CWA and the National Association of Broadcast Employees and Technicians-CWA) ("CWA" or where appropriate, "TNG-CWA/NABET-CWA"), Common Cause and the Office of Communication of the United Church of Christ, Inc., doing business as the United Church of Christ Media Justice Ministry (collectively, "Intervenors") respectfully submit this opposition to the Appellants/Petitioners' Emergency Motion To Expedite and Consolidate. ("Motion")

### Introduction

Petitioners/Appellants seek the Court's expedited review of the FCC's Hearing Designation Order ("HDO"), which they falsely claim is a final order and thus appealable. The Motion is premised on several strained contrivances that readily collapse under scrutiny. First, it lauds certain public interest benefits to the proposed transaction that it prematurely asks the Court to validate when the FCC has not yet performed its statutory duty to determine that very question. Second, the so-called "emergency" on which the Motion is premised is of the Petitioners/Appellants' own making. Their privately negotiated deadlines do not justify circumventing the FCC's process for determining whether grant of their multiple applications would serve the public interest. Third, the Motion does not

substantiate its claim of egregious delay by the FCC in its review of the

applications. Indeed, the FCC employed a reasonable and timely process, allowing

public participation as required by the Communications Act. Fourth, it is

unnecessary for the Court to consider the Motion's argument that the FCC's Office

of Administrative Law Judges is unconstitutional, since, among other reasons, the

FCC has alternative means of adjudicating the two issues of fact that it set for

hearing. Fifth, the Motion disputes the FCC's authority to regulate retransmission

consent rates, private employment matters, or interfere with privately negotiated

contracts. The FCC is doing none of these things. Rather, the FCC is legitimately

concerned with the effect of rate increases on consumers, potential harms to

localism in broadcasting, and whether the transaction is in the public interest.

Sixth, its claim that challengers to the Applications did not present sufficient

evidence to warrant a hearing is specious. The Communications Act

unquestionably empowers the FCC to initiate a hearing based on its own review of

applications, irrespective of the presence or absence of challenges.

### The Appeal

The request to consolidate these cases would have this Court act on the

appeal filed under 47 U.S.C. §402(b) within a month. The appeal is nothing less

than a challenge to the very constitutionality of the FCC's administration of

broadcast licensing and other telecommunications adjudications and its statutory

implementation of the Communications Act. Moreover, this challenge has been

mounted in a purported appeal of non-final agency action as to which this Court

will likely conclude that it has no jurisdiction to hear.

It is a stunning act of overreach to bring such a challenge at all, but the

Appellants/Petitioners would have their case briefed and resolved in weeks,

because, they say, they face harm arising from the contract termination date which

they selected in private negotiations among themselves. Such precipitous litigation

would transgress Intervenors' statutory and constitutional rights. Much more

significantly, and leaving aside the burden this would impose on litigants lacking

the deep pockets of the Appellants/Petitioners, such a truncated process would

deny opposing parties, the government and the public the benefit of meaningful

judicial evaluation of these sweeping arguments and thereby would impose

grievous damage to the rule of law.

For these reasons and others discussed below, consolidation and expedition

as to the pending appeal should be denied so that, if not dismissed on jurisdictional

grounds, it can be properly briefed, heard and resolved.

**The Mandamus Petition**

The mandamus petition is less momentous in part because it is so lacking in merit. In the context of this litigation, the proposed filing schedule as applied to the request for mandamus, should the Court choose to invite responses, is unreasonable and unduly burdensome on the other parties. Because of the burden, and the lack of merit, Intervenors urge the Court to limit expedition, if at all, to the mandamus petition alone.

**There Is No Imminent Harm That Justifies Any Grant of Relief**

Given the short deadline afforded for response to the emergency motion, for a more fulsome history of this and other issues in this case and more detailed citations, Intervenors respectfully refer the Court to their March 24, 2023 Opposition to Unauthorized Application for Review ("UAFR"). The Appellants/Petitioners *did not* include this pleading in their Addendum. Thus, Intervenors are attaching the document to this opposition as a Supplemental Addendum and ask that this Court waive any such rules that might not otherwise allow providing it as an attachment.[1]

_____

[1]The Opposition to Unauthorized Application for Review is also available in the FCC public electronic docket should the Court wish to take judicial notice: https://www.fcc.gov/ecfs/search/search-filings/filing/1032483463598

The central premise of the motion for expedition and consolidation as well as for mandamus relief rests on the central premise that Petitioners/Appellants are entitled to grant of their applications by May 22, 2023. They claim, without substantiation, that they are unable to extend their contractual termination beyond that date.[2]

Private parties do not dictate regulatory deadlines. Whether the Petitioners/Appellants can extend their loan commitments or find new lenders is entirely their responsibility. Their sales agreement allowed the parties to avail themselves of two extensions of 90 days each. In arms-length private negotiations among themselves and their lenders, the parties could have selected a different termination date. They could have negotiated for three, four or more extensions. This was their mistake, and it is not up to the FCC or this Court to fix it for them.

The Petitioners/Appellants also attempt to blame Intervenors and the FCC for the delay in processing their applications. In fact, protracted length of the agency review is attributable to what was put before them. The

---

[2]Petitioners/Appellants proceed as if they are the only parties in interest. 47 U.S.C. § 309(d)(1) expressly confers the right to file petitions to deny, and 47 U.S.C. § 309(e) gives parties the right to participate in any designated hearing. A premature termination of this proceeding based on dates selected by Petitioners/Appellants could only come by transgressing Intervenors' rights.

Petitioners/Appellants have sought approval of a package of transactions which deserved much more intense scrutiny than any other broadcasting case in recent memory, and perhaps ever. As a consequence of this complexity, and their own failure to present needed information to justify approval, they have yet to meet their statutory burden of demonstrating that grant of their applications would be in the public interest.

A simple sale of TEGNA to a single qualified purchaser would likely have been approved as a matter of course. It is the *Petitioners/Appellants* who concocted a sequenced series of transactions of unprecedented complexity with the undenied purpose of increasing retransmission fees that would be passed on to the public, including Intervenors' members. It is the *Petitioners/Appellants* who chose to bring an additional non-TEGNA station into the deal, notwithstanding that the station is controlled by a competing licensee which would then hold an equity interest in post-transaction TEGNA, potentially in violation of FCC ownership rules. It is the *Petitioners/Appellants* whose internal documents raise serious questions as to whether they will impair the Commission's core localism goals by cutting job positions necessary to provide adequate local programming. And it is the *Petitioners/Appellants* who failed to take advantage of multiple opportunities to

supplement the record to correct deficiencies, many of which were called to their attention within weeks of the filing of the applications, even before the initial deadline for petitions to deny.

Nor is it the case that the FCC "slow rolled" its administration of the case. Motion, p. 19. To the contrary, the FCC staff moved with alacrity, giving the Petitioners/Appellants two additional opportunities to eliminate questions that might have allowed for grant without a hearing, in addition to the Commission's liberal filing rules which permit the applicant to supplement the record at any time. It is the Petitioners/Applicants who hid the ball and then failed to take the hint and file additional information without being required to do so.

As more fully described in the UAFR (Supp. Add. pp. 10-12), before the initial deadlines for petitions to deny in early June, 2022, the public interest parties sought to *accelerate* the process by calling attention to shortcomings in the applications that would have to be addressed before any possible grant. This resulted in a staff request for supplemental filings that, if fully complied with, could have expedited completion of the case, without materially extending any filing deadlines. However, having found that there were still shortcomings in the record, Intervenors' August 1, 2022 reply identified nine categories of information

without which, they said, the Commission "cannot determine the exact nature of AGM's relationship to Standard General...."  (Add. pp. 691-692). Although the Petitioners/Appellants could have voluntarily supplemented the record with the identified documents, they chose not to do so. Thus, upon review of the record, on September 29, 2022, the Media Bureau issued a further request for documents and information, again setting tight deadlines for responses and any supplements to the petition to deny.

It is also critical to stress that, since the Applicants had failed to establish that grant is in the public interest, the Commission or staff could have simply designated a hearing at the completion of the initial pleading cycle. By identifying specific shortcomings in the record, the Intervenors provided a road map for what the Petitioners believed the Applicants would have to show to avoid a hearing. Even after receiving two such directives from the agency, the Applicants followed their own route, creating delays of their own making. And having failed to resolve important questions of fact, they left the FCC with an incomplete record that required designation of a hearing.  See 47 U.S.C. 309(d)(2).

The Merits Cannot of the Appeal Cannot and Should Not Be Precipitously Briefed

The appeal is a full bore challenge to every aspect of the FCC's

administration of the license renewal, transfer and assignment process.  The relief sought here would upend the procedures, precedents and legal standards in place since 1934. The vast scope of this appeal simply cannot be combined with the mandamus proceeding and most certainly cannot be meaningfully considered on the self-generated time table the Petitioners/Appellants demand.  To repeat: they seek to avoid the consequences of having entered into an unwise contract by disrupting the entire broadcast regulatory scheme.

The Petitioners/Appellants persist in claiming that the FCC had no basis to find that there are substantial and material facts about the case that require exploration at a hearing. They are wrong.  Even so, they do have the right to seek review of the agency's action, but only at such time as it actually takes final action.

To consider the merits of this case, this Court would need to assume this Court's precedents do not exist, that it has the jurisdiction to hear a non-final matter even when an agency's staff has acted under unchallenged delegated authority, that the agency's rules expressly state that the action is not subject to interlocutory review, that parties simply declare that the agency has taken final action because they want to come to this Court, all because they negotiated a contract they now don't like.  The Court would need to find that if the interests of

other parties stand in the way, it Court can ignore them. This meritless appeal should not be afforded consolidation and expedition, but to address Petitioners/Appellants' claims, Intervenors must take them at their word to demonstrate just some of the flaws in their cases.

It is true that hearing designations involving politically potent and deep-pocketed applicants happen only rarely, but they do happen.[3] And this is not a garden variety transfer of control of a broadcast licensee. Rather, it involves numbingly complex series of transfers between and among three companies. Notably, Petitioners/Appellants do not allude to the highly unusual structure of the proposed transactions here at issue. Indeed, the HDO devoted three full paragraphs just to set out a high-level description of the carefully sequenced transactions. Cite This includes using Cox Media Group's ("CMG") Boston TV station as the corporate vehicle to acquire TEGNA and immediately selling that expanded vehicle to Standard General for the undisputed purpose of allowing post-transaction TEGNA to charge the higher Cox retransmission fee rates. The deal would also allow CMG's parent, Apollo Global Management ("AGM") to acquire a substantial, nominally non-voting, interest in post-transaction TEGNA even as

---

[3]*See, e.g., Tribune Media Company*, 33 FCC Rcd 6830 (2018).

CMG would still hold de facto control of 13 full-power owned or operated TV stations, six of which are in markets that overlap TEGNA holdings, thereby raising concerns about the ability of CMG and post-transaction TEGNA to signal or share information, not just on retransmission consent, but on programming, procurement and other contracts, implicating violations of FCC rules and antitrust prohibitions. Cite. This is not an illusory problem; in fact, both CMG and TEGNA remain subject to a DOJ consent decree because of past collusion on advertising rates in violation of the Sherman Act.[4]

The Hearing Designation Order properly found that Applicants' last minute attempt to waive certain retransmission contracts did not resolve that question. This is explained in depth by the American Television Alliance.  (Add. pp. 850-856)

Intervenors TNG-CWA/NABET-CWA also presented evidence, much of which comes from the Applicants' own submissions, indicating that Standard General would help finance its operations by reducing its salary and other costs by cutting TEGNA jobs, thereby reducing local service and impeding the

---

[4]*U.S. v. Sinclair Broadcast Group, Inc*., 2019 WL 7584759 (2019)(TEGNA); *U.S. v. Sinclair Broadcast Group, Inc.*, 2019 WL 7584730 (2019)(Cox).

11

Commission's core localism goal.  Here, too, the HDO determined that substantial questions remain, even after another desperate unsolicited letter claiming to have fixed everything.  See HDO at 12 (Add. 939); *id.*, at 18 (Add. p. 956).

The complexity of this transaction and the questions raised in the record amply justified a hearing designation. And they indubitably caution against attempting to review the merits of this case simultaneously with a mandamus motion, much less on an expedited basis.

### There is no Valid Constitutional Issue Justifying Extraordinary Relief

The Applicants have attempted to create a Constitutional issue in this case with respect to the status of the ALJ under Article II. There is none, and certainly none that justify extraordinary relief by mandamus or an expedited appeal.

Even if there ever were a genuine issue as to whether the powers of an FCC ALJ might be questioned under Article II of the Constitution in an adjudicatory matter under 47 U.S.C. § 309, a point Intervenors do not concede, it does not arise in this case. That is because, as explained in Intervenors' opposition to the UAFR, in this case the ALJ's role is much more limited than in most cases because ALJ was not directed to make the final public interest determination, what is colloquially referred to as "ultimate issue." Thus, ALJ is functioning here

essentially as would any other FCC employee, making non-binding recommendations on essential but subsidiary issues that are appealable to the full Commission. The next steps will be performed by the FCC or an FCC employee who lacks for cause removal protection and would therefore not implicate Article II.

Moreover, and in any event, the Commission has established specific procedures allowing the full Commission en banc, a single Commissioner or an employee to be appointed as a "case manager to gather evidence for the Commission.[5] If a reviewing body ever determined that the appointment of the ALJ was suspect, principles of constitutional avoidance would allow the ALJ to be treated as a "case manager" in making her subsidiary findings of fact for the purposes of this case. Indeed, that is essentially what the Supreme Court did in *Free Enterprise*, where it applied principles of constitutional avoidance to remedy a problem using existing agency structures.[6] This Court afforded similar treatment

---

[5]*Procedural Streamlining of Administrative Hearings,* 35 FCC Rcd 10729 (2020),

[6]*Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 508-510 (2010); *id.* 477 U.S. at 508 ("Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem," severing any "problematic portions while leaving the remainder intact." *Ayotte v. Planned Parenthood of Northern New Eng.,* 546 U.S. 320, 328–329 (2006)).

in *Intercollegiate Broadcasting System, Inc. v. Copyright Royalty Tribunal Board*,

684 F.3d 1322, 1340, finding that "invalidating and severing the problematic for-

cause restriction was the best solution matching the problem and preserving the

remainder intact."

These distinctions are especially important here, because they underscore the

Applicants' massive overreach in the UAFR. Even it if it were found that the

delegation to the ALJ to resolve subsidiary issues and the appointment of the ALJ

raised constitutional questions, they are not entitled to their demand that the

Commission immediately grant the Applications. One way or another, there must

be a hearing.

### The Motion Fails to Show Good Cause for the Relief it Seeks

Petitioners/Appellants contend that the HDO effectively kills the transaction

and therefore was a final action that entitles them to review by this Court. The

Motion supports this claim with a snippet from *Friedman v. FAA*, 841 F.3d 537,

543 (D.C. Cir. 2016) indicating that an agency's actions suggest it has made up its

mind. In *Friedman v FAA*, 890 F.3d 1092,1096 (2018), however, the Court denied

review of the FAA's order on remand that provided reasons for the agency's

decision, stating that the FAA had provided adequate justification. The Motion's

14

reference to *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 478 (2001) is equally unhelpful, since "the word 'final,'…requires that the action under review mark the consummation of the agency's decisionmaking process."(citation omitted), which clearly is not the case when the FCC has designated a hearing that has not even begun. Nor does *Environmental Defense Fund, Inc. v. Hardin*, 428 F.2d 1093, 1099 (D.C. Cir. 1970), issued long before this Court developed its TRAC standard,[7] provide support for Petitioners/Appellants' argument of effective denial: "Clearly relief delayed is not always equivalent to relief denied. There are many factors that result in delay, and a court is in general ill-suited to review the order in which an agency conducts its business." There the Court was unable to decide whether delay amounted to a refusal to act and remanded the matter to the agency for further proceedings. *Id.*, at 1100.

### The Appellants/Petitioners Have Failed to Support Their Claim that May 22, 2023, is a Final Deadline

If the hearing and final action on the Applications cannot be concluded before May 22, 2023, it is Petitioners/Appellants own short-sightedness in failing to anticipate that the FCC might require an evidentiary hearing on this complex transaction and making adequate provision in their privately-negotiated

---

[7] *See TRAC v. FCC*, 750 F.2d 70 (D.C. Cir. 1984).

agreements. Petitioners/Appellants, moreover, have not provided any support for their unqualified claim that May 22, 2023, is a "final deadline." Federal Rules of Appellate Procedure, Rule 27 (a)(2)(B)(i) requires that Appellants file: "Any affidavit or other paper necessary to support a motion must be served and filed with the motion." Not a single affidavit from any officer, or director of the Petitioners/Appellants was submitted either to the FCC or this Court stating that May 22, 2023 is truly a final deadline. Petitioners/Appellants have not provided any affidavit or other evidence stating that they cannot extend their financing commitments or obtain financing elsewhere.  Significantly, they have not moved the Administrative Law Judge to dismiss the hearing, which remains in an active state before the FCC. The Appellants want to have their cake and eat it too. They are hoping to win in this Court on the FCC's "final action," but if not, they can still go back to the FCC and try to get the matter resolved in the hearing process. The Court, therefore, should disregard Petitioners/Appellants' claim that financing for the deal will be lost. To allow this case to proceed would set a dangerous precedent. Going forward, applicants before the FCC and other agencies could simply set arbitrary deadlines for agency action. When that deadline is not met, they could then come to this Court to demand that intervene on an expedited

schedule of their choosing.

**The Petitioner/Appellants have Come to Come to Court with Unclean Hands.**

Petitioners/Appellants seek to expedite these two cases and have them briefed on an accelerated schedule. At the same time, they have sought to block newly retained counsel for Intervenors from accessing key documents needed to participate in preparing briefs in before the Court. After the Petitioners/Appellants' applications were designated for hearing, the firm of Smithwick & Belendiuk, P.C. was retained to assist in the litigation. On March 15, 2023, counsel filed an Acknowledgments of Confidentiality to receive access to Confidential and Highly Confidential Information pursuant to the terms of the Protective Order released June 3, 2022, in MB Docket No. 22-162.[8] This was a routine filing which would have permitted counsel to review confidential documents which underpin the Media Bureau's decision to designate the matter for hearing. On March 20, 2023, the Appellants objected to the request.[9]  The ALJ has not ruled on this motion and given the state of the proceeding is not expected to rule on the motion. Petitioners/Appellants made it clear that they would be seeking relief from the Court on an expedited basis. Their action has hobbled Intervenors' ability to

---

[8]https://www.fcc.gov/ecfs/search/search-filings/filing/103151723315253
[9]https://www.fcc.gov/ecfs/search/search-filings/filing/10320215466467

17

effectively participate in this proceeding. Mandamus is not a writ of right. It issues to remedy a wrong, not to promote one, and will not be granted in aid of those who do not come into court with clean hands. United *States ex rel. Turner v. Fisher*, 222 U.S. 204, 32 S. Ct. 37 (1911). Appellants have not come to Court with clean hands. They argue that time is of the essence and that the FCC and the Court must act on the schedule they set, while seeking to block or delay Intervenors from effectively participating in this proceeding.

## Conclusion

Wherefore, this Court should deny the motion to consolidate and grant the motion to expedite, if at all, only with respect to No. 23-1084.

Respectfully submitted,

/s/Arthur V. Belendiuk
Arthur V. Belendiuk
Smithwick & Belendiuk, P.C.
5028 Wisconsin Avenue, N.W.
Suite 301
Washington,D.C. 20016
abelendiuk@fccworld.com
(202) 363-4559

/s/Andrew Jay Schwartzman
Andrew Jay Schwartzman
1341 G Street, NW - Fifth Floor
Washington, DC 20005
AndySchwartzman@gmail.com
(202) 812-3210

March 29, 2023

18

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this motion complies with the applicable type- face, type style, and type-volume limitations. This motion was prepared using a proportionally spaced type (New Times Roman, 14 point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), this motion contains 3727 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this motion.

Respectfully Submitted,

/s/ Andrew Jay Schwartzman
Andrew Jay Schwartzman
1341 G Street, NW Fifth Floor
Washington, DC 20005
AndySchwartzman@gmail.com
(202) 812-3210

/s/Arthur V. Belendiuk
Arthur V. Belendiuk
Smithwick & Belendiuk, P.C.
5028 Wisconsin Avenue, N.W.
Suite 301
Washington, D.C. 20016
abelendiuk@fccworld.com
(202) 363-4559

March 29, 2023

## CERTIFICATE OF SERVICE

       I hereby certify that, on March 29, 2023, I electronically filed the foregoing Opposition to Emegency Motion to Expedite and Consolidate with the Clerk for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that I have caused the foregoing petition to be served by FedEx overnight service and by electronic mail on the Commission and on parties to the proceedings before the Commission as follows:

**Federal Communications Commission**
Attn: General Counsel
45 L Street, N.W.
Washington, D.C. 20554
litigationnotice@fcc.gov

**SCGI Holdings III, LLC**
Miguel A. Estrada
Counsel of Record
Jonathan C. Bond
GIBSON, DUNN & CRUTCHER
LLP 1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
mestrada@gibsondunn.com

Scott R. Flick
Jessica Nyman
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, NW
Washington, DC  20036
scott.flick@pillsburylaw.com
jessica.nyman@pillsburylaw.com

**TEGNA, Inc.**
Jennifer A. Johnson
Jocelyn Jezierny
Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC  20001
jjohnson@cov.com
Jjezierny@cov.com

**CMG Media Corporation**
Michael D. Basile
Jason Radermacher
Henry Wendel
Cooley LLP
1299 Pennsylvania Avenue, NW
Washington, DC 20004
mdbasile@cooley.com
jrademacher@cooley.com
hwendel@cooley.com

Respectfully Submitted:

/s/ Andrew Jay Schwartzman

March 29, 2023