IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| SGCI Holdings III LLC, TEGNA Inc., <br> and CMG Media Corporation, <br>           Appellants, <br><br>         v. <br><br> Federal Communications Commission, <br>           Appellee. | ) <br> ) <br> ) <br> ) <br> ) <br> )   No. 23-1083 <br> ) <br> ) <br> ) |

**MOTION TO DISMISS**

  The Federal Communications Commission respectfully moves to dismiss this case for lack of jurisdiction. SGCI Holdings III LLC, TEGNA Inc., and CMG Media Corporation (collectively, "appellants") purport to bring this appeal under section 402(b) of the Communications Act. But section 402(b) provides for appeals only "from decisions and orders of the Commission." 47 U.S.C. § 402(b). In this case, there is no Commission decision or order, and the order from which appellants seek to appeal is not final in any event.

  Appellants seek review of an order issued on delegated authority by the FCC's Media Bureau: *Consent to Transfer Control of Certain Subsidiaries of TEGNA Inc. to SGCI Holdings III LLC*, DA 23-149 (Med. Bur. released Feb. 24, 2023) ("*Hearing Designation Order*"). *See* Notice of Appeal, Exhibit A. Under section 402(b), however, a party may not appeal

"directly to this Court from a decision made by a delegated authority." *NTCH, Inc. v. FCC*, 877 F.3d 408, 414 (D.C. Cir. 2017) (quoting *Environmentel, LLC v. FCC*, 661 F.3d 80, 84 (D.C. Cir. 2011)). And even if the Bureau's *Hearing Designation Order* could fairly be attributed to the Commission, it is not a final order subject to judicial review because it neither "mark[s] the 'consummation' of the agency's decisionmaking process" nor determines any of appellants' "legal rights or obligations." *Bennett v. Spear*, 520 U.S. 152, 178 (1997). Accordingly, the Court lacks jurisdiction to hear this appeal, and the appeal should be dismissed.[1]

## BACKGROUND

Section 310(d) of the Communications Act requires that "when a broadcast station owner wants to transfer ownership of a station to a third party, the FCC must approve the assignment of the station's broadcast license to the new owner." *Stolz v. FCC*, 882 F.3d 234, 236 (D.C. Cir. 2018). The Commission may approve such transfers of control or assignments "only 'upon finding … that the public interest, convenience, and necessity will be served thereby.'" *Ibid*. (quoting 47 U.S.C. § 310(d)).

---

[1] Concurrent with their notice of appeal (and perhaps recognizing its jurisdictional infirmities), appellants have filed a conditional petition for mandamus in No. 23-1084. *See* Notice of Appeal at 6. The Commission is prepared to respond to that petition as directed by the Court.

Section 309 of the Act prescribes procedures for the FCC to review applications for transfer of control or assignment and petitions to deny such applications. If "a substantial and material question of fact is presented" by an application and related pleadings "or the Commission for any reason is unable to make the finding" that the proposed transfer of control or assignment will serve the public interest, the Commission "shall formally designate the application for hearing" to resolve those issues. 47 U.S.C. § 309(e).

Appellants filed applications with the FCC seeking consent to transfer control of several dozen broadcast television stations as part of a complex merger transaction involving TEGNA, Standard General, and CMG Media Corporation. Acting on delegated authority, the FCC's Media Bureau accepted the applications for filing and established a pleading cycle on April 21, 2022. *See* Public Notice, MB Docket No. 22-162, DA 22-443 (Med. Bur. April 21, 2022).

In June 2022, the Commission received two petitions to dismiss or deny the applications.[2] Both petitions asserted that grant of the applications would not serve the public interest because the transactions would (1) result

---

[2] One petition was filed by The NewsGuild-CWA and the National Association of Broadcast Employees and Technicians-CWA ("CWA"). The other was filed by Common Cause and United Church of Christ, OC, Inc.

3

in higher subscription rates for multichannel video programming services (such as cable service) due to increased retransmission consent fees demanded by the broadcast stations and (2) undermine localism by leading to reductions in local jobs and the amount and scope of local news coverage. *See Hearing Designation Order* ¶ 12.  In response to those and additional concerns raised by other commenters, the Commission in September 2022 issued a second request for information from appellants.  In October 2022, CWA supplemented its petition to dismiss or deny.  *Ibid*.

Ultimately, appellants responded to the concerns that had been raised in the proceeding by filing letters with the Commission that made unsolicited commitments regarding retransmission consent fees and reductions in local jobs after consummation of the transactions.  On December 23, 2022, the Media Bureau issued a public notice seeking comment on these letters.  *Hearing Designation Order* ¶ 14.

Two months later, after reviewing the record, the Media Bureau concluded that it was "unable to find" that the proposed transaction would not likely cause above-market rates to be charged to subscribers to multichannel video programming services.  *Hearing Designation Order* ¶ 32.  The Bureau also found that "substantial and material questions remain" as to whether the proposed transactions could undermine "localism"

4

through "reductions in local jobs." *Hearing Designation Order* ¶ 3. Accordingly, on February 24, 2023, the Bureau designated the applications for hearing pursuant to 47 U.S.C. § 309(e) regarding the issues of retransmission consent fees and localism. The issues designated for hearing are:

> (a) Whether, in light of the record presented, retransmission consent fees will rise as a result of the Transactions, and if so, whether such an increase is the result of a properly functioning, competitive marketplace, or, alternatively, whether such rate increases would be the result of the unique structure of the Transactions in which the various assignments and/or transfers of control are closed sequentially in order to take advantage of after-acquired station clauses and maximize retransmission revenue, and further, whether such a result would be mitigated by the commitments offered by the Applicants; and
>
> (b) Whether, and to what extent, in light of the record presented, local content and programming in the affected communities would be adversely affected due to the proposed plans and commitments of SGCI Holdings for station-level staff; its intentions for investments in the stations; the potential financial pressures connected with the acquisition and ownership structure; and the potential effectiveness of the commitments offered by the Applicants.

*Hearing Designation Order* ¶ 51.

On March 17, 2023, appellants filed an application for full Commission review of the Bureau's *Hearing Designation Order*. The Commission has not yet acted on the application for review.[3]

---

[3] Under FCC rules, "[a]pplications for review of an order designating a matter for hearing that was issued under delegated authority shall be deferred until exceptions to the initial decision in the case are filed, unless

5

## ARGUMENT

The Court lacks jurisdiction over this appeal for two reasons. First, the order on appeal is a Bureau order, not a Commission order, and 47 U.S.C. § 402(b) gives this Court jurisdiction only over "decisions and orders of the Commission" in specified areas. Of particular relevance here, section 402(b)(3) grants jurisdiction in cases in which an application for transfer of control or assignment of a license has been "denied *by the Commission*." 47 U.S.C. § 402(b)(3) (emphasis added). Second, even if the order could be attributed to the Commission, it does not constitute "final" agency action. Consequently, this Court lacks jurisdiction over the appeal, and the case should be dismissed.

I. It is well settled that under 47 U.S.C. § 402(b), a party may not appeal "directly to this Court from a decision made by" Commission staff acting on "delegated authority." *NTCH*, 877 F.3d at 414 (quoting *Environmentel,* 661 F.3d at 84). Section 5(c)(7) of the Communications Act states that "[t]he filing of an application for review" by the full Commission

---

the presiding officer certifies such an application for review to the Commission." 47 C.F.R. § 1.115(e)(1). The presiding officer in this case (the Administrative Law Judge) declined to certify the application for review to the Commission. *See Consent to Transfer Control of Certain Subsidiaries of TEGNA Inc. to SGCI Holdings III LLC*, 2023 WL 2560036 (ALJ released March 16, 2023). Appellants have petitioned for waiver of this rule. Their waiver request is pending.

6

"shall be a condition precedent to judicial review of any order, decision, report, or action made or taken pursuant to" authority delegated by the Commission. 47 U.S.C. § 155(c)(7); *see Richman Bros. Records, Inc. v. FCC*, 124 F.3d 1302 (D.C. Cir. 1997). Section 5(c)(7) further provides that "[t]he time within which a petition for review must be filed in a proceeding" governed by 47 U.S.C. § 402(a), "or within which an appeal must be taken under" 47 U.S.C. § 402(b), "shall be computed from the date upon which public notice is given of orders disposing of all applications for review filed in any case." 47 U.S.C. § 155(c)(7).

In applying this statute, this Court has "expressly [held] that a petition for review filed after a bureau decision but before resolution by the full Commission is subject to dismissal as incurably premature." *Int'l Telecard Ass'n v. FCC*, 166 F.3d 387, 388 (D.C. Cir. 1999). Likewise, the Court has concluded that for purposes of section 5(c)(7), "the full FCC must have the opportunity to review all cases and all aspects of those cases before parties may exercise their statutory right to appeal to this Court under 47 U.S.C. § 402(b)." *NTCH*, 877 F.3d at 414 (quoting *Environmentel*, 661 F.3d at 84). In short, an appeal filed pursuant to section 402(b) before the full Commission rules on an application for review is incurably premature. This

7

appeal suffers from that fatal defect, and it should be dismissed for that reason alone.

II. Even if the *Hearing Designation Order* could be considered an order of the Commission, it still would not be subject to judicial review because it does not constitute final agency action.

As appellants acknowledge (Notice of Appeal at 4-5), agency action is "final" (and therefore reviewable under the Administrative Procedure Act, 5 U.S.C. § 704) if it (1) "mark[s] the consummation of the agency's decisionmaking process" and (2) determines "rights or obligations" or causes "legal consequences" to "flow." *Bennett*, 520 U.S. at 177-78 (cleaned up). Because each of these requirements "must be satisfied independently for agency action to be final, deficiency in either is sufficient" to conclude that the challenged agency action is not final. *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018). The order at issue here satisfies neither of the prerequisites for finality.

To begin with, the *Hearing Designation Order* does not "mark the consummation of the agency's decisionmaking process." *Bennett*, 520 U.S. at 178. It simply designates certain issues for hearing and further examination. "By its terms," the *Hearing Designation Order* did not contain "a definitive statement of position" regarding appellants' applications; it

8

merely made "a threshold determination that further inquiry is warranted." *FTC v. Standard Oil Co.*, 449 U.S. 232, 241 (1980). Moreover, no "legal consequences flow" from the order; it does not establish any "rights or obligations." *Bennett*, 520 U.S. at 178. The order does not deny the applications. Instead, it instructs the administrative law judge to make a further inquiry into specific issues bearing on whether the public interest would be served by the grant of the applications. Such "merely investigatory" agency action is "not final agency action" because "the agency has not yet made any determination or issued any order imposing any obligation …, denying any right …, or fixing any legal relationship." *Reliable Automatic Sprinkler Co. v. Consumer Product Safety Comm'n*, 324 F.3d 726, 732 (D.C. Cir. 2003).

Appellants maintain that the Commission's failure to act on their application for review of the *Hearing Designation Order*—an application filed less than two weeks ago—"constitutes a 'constructive denial' of the applications" for assignment. Notice of Appeal at 6 (quoting *Friedman v. FAA*, 841 F.3d 537, 541-42 (D.C. Cir. 2016)). But there is no basis for appellants' assertion that the Commission "has made up its mind" to deny those applications. Notice of Appeal at 5 (quoting *Friedman*, 841 F.3d at 543). The Media Bureau determined that the applications for assignment

9

raise substantial and material issues of fact that cannot be resolved without a hearing. The Bureau determined that it will not be in a position to conclude whether granting those applications would serve the public interest until the hearing is completed. *Hearing Designation Order* ¶ 2. Given the ongoing review of appellants' applications by FCC staff, appellants cannot credibly claim that the Commission's failure to act on the recently filed application for review of the *Hearing Designation Order* is "tantamount to an order denying" the applications for assignment. Notice of Appeal at 6 (quoting *Environmental Defense Fund, Inc. v. Hardin*, 428 F.2d 1093, 1099 (D.C. Cir. 1970)).[4]

Appellants argue that the *Hearing Designation Order* amounts to an "effective denial" of their assignment applications because the hearing "cannot be completed before the financing underpinning the transaction expires on May 22, 2023." Notice of Appeal at 3. But that expiration date

---

[4] Because the Commission has taken no definitive position on the merits of the applications for assignment, this case is distinguishable from the cases cited by appellants to support their claim that the Commission has taken "final" action here. *See Friedman*, 841 F.3d at 543 (finding that "the FAA has made up its mind"); *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers*, 417 F.3d 1272, 1279 (D.C. Cir. 2005) (finding "nothing 'tentative' or 'interlocutory' about the issuance of permits" by the Army Corps of Engineers); *Her Majesty the Queen in Right of Ontario v. U.S. EPA*, 912 F.2d 1525, 1532 (D.C. Cir. 1990) (the EPA took "a definitive position" that had "a direct and immediate impact on the parties").

10

was not set by the Commission. It is a deadline of appellants' own making. And appellants fail entirely to explain why that deadline cannot be revised or renegotiated in light of the *Hearing Designation Order*. At this juncture, any decision by appellants not to proceed with the proposed transaction would be their own private business decision, not the result of a regulatory directive from the agency.

Appellants contend that the test for determining whether agency action is final "is flexible and pragmatic." Notice of Appeal at 5 (citing *Nat'l Ass'n of Home Builders*, 417 F.3d at 1279). As this Court has recognized, however, there are limits to the flexibility of the finality inquiry. "A requirement that a party participate in additional administrative proceedings"—*e.g.*, by seeking and obtaining full Commission review of a Bureau order before proceeding to court—"'is different in kind and legal effect from the burdens attending what heretofore has been considered to be final agency action.'" *Nat'l Ass'n of Home Builders*, 417 F.3d at 1279 (quoting *Standard Oil*, 449 U.S. at 242). The Court explained that "'the doctrine of finality' would be no more than 'an empty box' if the mere denial of a procedural advantage constituted final agency action subject to judicial review." *Ibid*. (quoting *ALCOA v. United States*, 790 F.2d 938, 942

11

(D.C. Cir. 1986)). The *Hearing Designation Order* is just the kind of procedural order that does not constitute final agency action.

## **CONCLUSION**

By its terms, section 402(b) permits appeals only "from decisions and orders of the Commission." 47 U.S.C. § 402(b). There is no such decision or order here. Instead, appellants ask the Court to review an order of a subordinate bureau of the Commission designating their assignment applications for hearing.

In any event, this Court lacks jurisdiction over the *Hearing Designation Order* because it does not constitute final Commission action. That order simply initiates a process by which an administrative law judge is to inquire into issues bearing on whether grant of appellants' applications would serve the public interest. *See* 47 U.S.C. § 310(d).

Accordingly, the Court should dismiss this appeal for lack of jurisdiction.

Respectfully submitted,

P. Michele Ellison
General Counsel

Jacob M. Lewis
Deputy General Counsel

/s/James M. Carr

James M. Carr
Scott M. Noveck
Counsel

Federal Communications Commission
Washington, DC  20554
(202) 418-1740

March 29, 2023

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements and Type Style Requirements

1. This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

    ☒ this document contains <u>2584</u> words, *or*

    ☐ this document uses a monospaced typeface and contains __ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this document has been prepared in a proportionally spaced typeface using <u>Microsoft Word in Office 365</u> in <u>14-point Times New Roman</u>, *or*

    ☐ this document has been prepared in a monospaced spaced typeface using _____ with _____.

*/s/ James M. Carr*

James M. Carr
Counsel

Federal Communications Commission
Washington, D.C. 20554
(202) 418-1740

# CERTIFICATE OF FILING AND SERVICE

I, James M. Carr, hereby certify that on March 29, 2023, I filed the foregoing Motion to Dismiss with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the electronic CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ James M. Carr*

James M. Carr
Counsel

Federal Communications Commission
Washington, D.C. 20554
(202) 418-1740