No. 23-1083

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————

SGCI HOLDINGS III LLC, TEGNA INC.,
AND CMG MEDIA CORPORATION, APPELLANTS

*v.*

FEDERAL COMMUNICATIONS COMMISSION, APPELLEE

———————————————

## RESPONSE IN OPPOSITION
## TO MOTION TO DISMISS

———————————————

Kevin F. King
Jennifer A. Johnson
Jocelyn G. Jezierny
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C.  20001
(202) 662-6000


*Counsel for Appellant*
*TEGNA Inc.*

Miguel A. Estrada
  *Counsel of Record*
Jonathan C. Bond
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
mestrada@gibsondunn.com


*Counsel for Appellant*
*SGCI Holdings III LLC*

*[Additional Counsel Listed On Inside Cover]*

David E. Mills
Michael D. Basile
Henry H. Wendel
COOLEY LLP
1299 Pennsylvania Avenue, N.W.
Suite 700
Washington, D.C.  20004
(202) 842-7800

*Counsel for Appellant*
*CMG Media Corporation*

Stephen J. Hammer
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX  75201
(214) 698-3100

Scott R. Flick
Jessica T. Nyman
PILLSBURY WINTHROP
  SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C.  20036
(202) 663-8000

*Counsel for Appellant*
*SGCI Holdings III LLC*

## INTRODUCTION

The Federal Communications Commission (FCC or Commission) is fully aware that its conduct in this matter, absent this Court's intervention, will kill the multibillion-dollar deal at issue. The FCC does not dispute, and its staff previously conceded, that the hearing its Media Bureau has ordained before its administrative law judge (ALJ) cannot be completed before the deadline for the deal's consummation. Indeed, the ALJ issued an order yesterday that confirms that the administrative process cannot be completed by May 22. And the FCC does not deny that, despite the broadcasters' urgent pleas for the Commission to countermand the Bureau's action (and their reiteration of the deal's deadline), the Commission has done nothing.

From the standpoint of finality—to which the Supreme Court has "long taken" a "'pragmatic' approach," *U.S. Army Corps of Engineers* v. *Hawkes Co., Inc.*, 578 U.S. 590, 599 (2016)—that should be the ballgame. The finality inquiry asks whether the agency, "for all practical purposes[,] 'has ruled definitively'" on the disputed issue. *Id.* at 598 (citation omitted). Whether "further administrative proceedings" might theoretically be "available" is irrelevant where the agency has made clear by its

conduct that it will not change course in the relevant window. *Clean Air Council* v. *Pruitt*, 862 F.3d 1, 7 (D.C. Cir. 2017). And the relevant window here will close on May 22, when the *over 14-month-long* financing commitments expire. In these circumstances, akin to others this Court has confronted for at least five decades, the Commission's acquiescence in the Media Bureau's consignment of the matter to an ALJ hearing that the Commission knows will extend beyond the deal's expiration date constitutes final agency action in the only legally relevant sense.

That the FCC chooses to hide behind the Bureau's procedural maneuvers, and has withheld a formal order explicitly denying the transaction, does not insulate its action from judicial review. This Court has seen and rejected that kind of approach before. The Court has made clear that, "when administrative inaction has precisely the same impact on the rights of the parties as denial of relief, an agency cannot preclude judicial review by casting its decision in the form of inaction rather than in the form of an order denying relief." *Environmental Defense Fund, Inc.* v. *Hardin*, 428 F.2d 1093, 1099 (D.C. Cir. 1970). Inaction by the Commission on the broadcasters' applications in these circumstances—where the FCC has had the matter before it for more than a year, and has known of

the deadline to complete the transaction all along—would constitute final agency action denying the broadcasters' applications.

*A fortiori*, when a Commission component has chosen the outcome by setting a trial that necessarily means the deal's demise, and the Commission declines to intervene, that delegated action is chargeable to the FCC itself.  The Commission can exercise its statutory authority over license-transfer applications in the first instance and face judicial review. What it cannot do is withhold formal action—knowing that its silence will be fatal to the transaction—while thereby frustrating judicial review by pretending that the matter is still under ongoing consideration.

A central flaw in the Commission's contrary theory is its artificially atomistic approach to agency action.  The Commission contends (Mot. 6-8) that the *Commission* has not acted because the order under review was signed only by an official of its Media Bureau.  And it contends that the Commission's inaction in the face of that procedural directive does not reflect any definitive determination on the merits by the FCC.  Setting to one side that the Bureau signatory simultaneously serves as a legal advisor on the Chair's personal staff, the Commission's basic error

is to miss the key insight of fifty-plus years of this Court's finality precedent. The Court has repeatedly recognized that an agency's refusal to act *can itself constitute* final action by the agency. Inaction in the face of a real-world deadline is, from the pragmatic perspective the Supreme Court has prescribed, indistinguishable from an explicit refusal to act. That is all the more true when the inaction comes in the form of silence in the face of decree by the agency's own subordinate that puts in motion a process that cannot conceivably be completed in time to be relevant.

Both the Commission's attempt to distinguish its inaction from measures undertaken by its Media Bureau, and its characterization of the Commission's own silence as something less than a definitive decision, miss the key point. The finality inquiry asks whether the agency has spoken its final word with concrete consequences. An agency that lets a subordinate forbid any agency pronouncement until the private activity at issue becomes moot has necessarily said its piece. That the agency offered no formal explanation for constructively denying the requested approval only makes its definitive action more unlawful and arbitrary.

The Commission accordingly retreats to the assertion that the deadline for completing the deal here is irrelevant because it "was not set by the Commission." Mot. 11. That assertion reflects an alarmingly unrealistic view of the market the FCC oversees. First principles of finance teach that no financing commitment in this world can endure until the eschaton.

Instead, rational actors in the marketplace require a foreseeable horizon. Deals often include built-in flexibility—as this one did—but they cannot be indefinite, and their temporal terms cannot be infinitely pliable. The parties to the transaction here took more than ordinary precautions by securing commitments and possible (now exhausted) extensions that span more than *double* the Commission's own target timeline for approving such applications—a target the FCC has either hit or beaten by a mile in similar matters. And as explained at length in the broadcasters' prior submissions, the Commission's delay in processing this matter was unprecedented. It has never, for example, ordered three rounds of pleadings on such a transaction.

The Commission's contention (Mot. 11) that the private parties had to build in time when structuring their deal for unforeseeable and

inexplicable delay reflects poorly on an agency tasked with promoting the public interest.  It is also ultimately irrelevant to the finality question now before the Court.  Whatever the source of the imminent, immovable deadline for the deal's closure, that deadline itself is indisputable.  Cf. *Friedman* v. *FAA*, 841 F.3d 537, 542-543 (D.C. Cir. 2016) (holding that agency "engaged in final agency action subject to this Court's review" where it "clearly communicated it w[ould] not reach a determination on" a party's request even where the agency's "refus[al]" was based on the party's own failure to supply requested information).  The critical fact is that the Commission—in full view of that deadline—has chosen not to interrupt an illegal, unnecessary, and pretextual procedural detour that will prevent the FCC itself from revisiting the matter before the deal dies. That choice is chargeable to the Commission.  And it is reviewable by this Court.

## ARGUMENT

This Court may hear appeals from "decisions and orders of the Commission" from "any party to an application for authority to transfer" a license that is "denied by the Commission," or a party "adversely affected" by such denial.  47 U.S.C. § 402(b)(3), (6).  The broadcasters qualify.  The

agency's actions—both the Media Bureau's egregious delay and the Commission's ratifying inaction notwithstanding pleas for intervention—demonstrate that the Hearing Order was a conscious decision to consign the applications to a hearing that would outlast the viability of the transaction, which is a final denial warranting this Court's review under longstanding finality principles.

## I.    The Hearing Order Is A Final Denial Of The Broadcasters' Applications

A.    Agency action is final if it (1) "mark[s] the 'consummation' of the agency's decisionmaking process" and (2) determines "rights or obligations" or causes "legal consequences [to] flow." *Bennett* v. *Spear*, 520 U.S. 154, 177-178 (1997) (citations omitted). That inquiry is insusceptible of "self-implementing, bright-line rule[s]." *National Ass'n of Home Builders* v. *U.S. Army Corps of Engineers*, 417 F.3d 1272, 1279 (D.C. Cir. 2005). Instead, the "finality" rubric that the Supreme Court has "long taken" is thoroughly "pragmatic." *U.S. Army Corps of Engineers* v. *Hawkes Co., Inc.*, 578 U.S. 590, 599 (2016). The Supreme Court has insisted that "the consequences of deferment of judicial review" should guide finality—as they do under the "intensely 'practical' approach which the [Supreme] Court has adopted" regarding appeals from

7

final district-court judgments under 28 U.S.C. § 1291. *Mathews* v. *Eldridge*, 424 U.S. 319, 331 n.11 (1976) (citing *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546 (1949)).

Under that pragmatic approach, the ultimate question is whether the agency, "for all practical purposes[,] 'has ruled definitively'" on the disputed issue. *Hawkes*, 578 U.S. at 598 (citation omitted). It is well established in this Circuit that agency action may be final in that sense even in "the absence of a formal statement," for "agency inaction may represent effectively final agency action that the agency has not frankly acknowledged." *Her Majesty the Queen in Right of Ontario* v. *EPA*, 912 F.2d 1525, 1531 (D.C. Cir. 1990) (letter indefinitely postponing petition for rulemaking was final agency action) (citation omitted). That is particularly true where "exigent circumstances render" an agency's "failure to act  * * *  equivalent to a final denial" of action and threaten "irreparable injury," and "administrative inaction has precisely the same impact on the rights of the parties as denial of relief." *Environmental Defense Fund, Inc.* v. *Hardin*, 428 F.2d 1093, 1098-1099 (D.C. Cir. 1970) (failure to rule on petition to suspend registration was final agency action because it was "tantamount to an order denying suspension").

8

This Court recently reaffirmed these principles in *Friedman* v. *FAA*, 841 F.3d 537 (D.C. Cir. 2016). There, the FAA advised an applicant for a pilot certification that his application "remain[ed] under consideration"—even though the agency had already explained that the application could not go forward without certain medical information that the applicant refused to provide. *Id.* at 540-541 (citation omitted). The Court held that there had been "a constructive denial" of the application that constituted final agency action because those "actions suggest [the agency] ha[d] made up its mind," even though further administrative proceedings were theoretically available. *Id.* at 541, 543.

The *Friedman* Court held that "the applicable test" for finality "is not whether there are further administrative proceedings available, but rather 'whether the impact of the order is sufficiently "final" to warrant review in the context of the particular case.'" 842 F.3d at 542 (citation omitted). The FAA could not "preven[t]" the challenger "from obtaining any explicitly final determination on his application [while] thwarting the Court's interest in reviewing those agency actions that, in practical effect if not formal acknowledgement, constitute" final agency action. *Id.* at 542. The Court explained that the agency's "actions suggest[ed]" that

9

it "ha[d] made up its mind, yet it s[ought] to avoid judicial review by holding out a vague prospect of reconsideration." *Id.* at 543.

 B. Under these principles, the Hearing Order is final.

 1. The Hearing Order is the consummation of the Commission's decisionmaking—the agency's "actions suggest [it] has made up its mind" that the applications should be denied. *Friedman*, 842 at 543. The Media Bureau ordered a hearing on February 24, 2023—with full awareness that the financing essential to the transaction would expire in 88 days, and that no such ALJ hearing on a license transfer application in the Commission over the past 30 years has *ever* concluded in fewer than 300 days. See Mot. to Expedite 19, 24. Indeed, the Commission's Enforcement Bureau *concedes* that it would be "impossible" to complete the hearing in the time remaining for the transaction to close. Mandamus Add. 1034. Just yesterday, more than a month after the Hearing Order, the ALJ set an *initial* status conference for one month out (April 26). Initial Case Order, MB Docket No. 22-162, FCC 23M-08 (Mar. 29, 2023).

 The Hearing Order's fatal postponement tracks the agency's pattern of delay throughout the proceeding, including delay in accepting the

applications for filing and setting the initial pleading cycle dates, multiple extensions on pleading deadlines, an unprecedented three separate comment periods, and a months-long lag in granting many of the challengers' far-reaching discovery requests. No such delay was even feasibly necessary—the deal does not require any divestitures or regulatory waivers, complies with all FCC rules and policies, and the rest of the Executive Branch has not objected to the transaction. The Commission should have easily beaten its own longstanding 180-day shot clock to adjudicate license transfers, as it has comfortably been able to do for numerous deals more complex than this. Mot. to Expedite 7; Mandamus Add. 1038.

Indeed, the ALJ hearing can serve no purpose *other* than delay. The Hearing Order did not identify any gap in the factual record that needs filling. Nor could it have, given the broadcasters' comprehensive document production. Instead, the Hearing Order described legal conclusions to be drawn based on the evidence—hardly the sort of task that requires a hearing. See *Barrick Goldstrike Mines Inc.* v. *Browner*, 215 F.3d 45, 49 (D.C. Cir. 2000) (finding final action where court could not "imagine [anything] happening [that] would bring the issues into greater focus").

11

Moreover, in the pragmatic sense that controls the finality analysis, the Commission "has rendered its last word on the matter." *Whitman* v. *American Trucking Ass'ns, Inc.,* 531 U.S. 457, 478 (2001) (citation omitted). No further proceedings will occur before the agency because the transaction will be dead long before any ALJ hearing is completed. Although there may notionally be "further administrative proceedings available," the "impact of the order is sufficiently final to warrant [judicial] review" now—lest the denial escape judicial review entirely. *Clean Air Council* v. *Pruitt*, 862 F.3d 1, 7 (D.C. Cir. 2017) (citation omitted) (order staying final rule constituted final agency action); see *American Trucking*, 531 U.S. at 479 ("Though the agency has not dressed its decision with the conventional procedural accoutrements of finality, its own behavior * * * belies the claim that its interpretation is not final").

2.    The Commission's constructive denial of the applications also settles the broadcasters' transmission rights definitively. Standard General may not acquire stations that broadcast over the airwaves unless the applications to transfer the licenses are approved. See *National Ass'n of Home Builders*, 417 F.3d at 1279 (permit decisions "carry easily-identifiable legal consequences"); *Friedman*, 841 F.3d at 543 (second *Bennett*

12

prong satisfied where pilot certification applicant could not resume employment as pilot).

That the Commission denied the applications through strategic delay instead of a formal denial does not make its decision less final. The irreparable harm of the Commission's delay—*i.e.*, the demise of the transaction absent intervention from this Court—"has precisely the same impact on the rights of the parties as denial of relief." *Environmental Defense Fund*, 428 F.2d at 1099. In other words, the "practical effect" of the Hearing Order constituted a "constructive denial" of the applications. *Friedman*, 841 F.3d at 541-542. Allowing that denial to escape judicial scrutiny would create a playbook for future agency pocket vetoes. *Id.* at 542 (agency may not "thwar[t] the Court's interest in reviewing" its decisions simply by withholding "formal acknowledgement" of the decision).

3.    None of the Commission's various arguments opposing finality passes muster.

First, the Commission relies (Mot. 8-9) on labels, arguing that calling for a hearing "[b]y its terms" cannot be a final agency action. But this Court has been clear that it is not "formal acknowledgement," but the "practical effect" of the order, that controls finality. *Friedman*, 842 F.3d

13

at 542.  The test is not simply a name game:  An agency cannot escape judicial review by declining to "frankly acknowledg[e]" its decision, *Her Majesty the Queen in Right of Ontario*, 912 F.2d at 1531, such as by advising an applicant that his application "remains under consideration," *Friedman*, 842 F.3d at 541—or here by promising a future hearing that it knows will never actually happen.

The agency further protests (Mot. 9-10 & n.4) that the Hearing Order is non-final because it does not express a "definitive position."  But that protest misses the critical point of this Court's precedent holding that inaction can constitute an agency's definitive response to a particular question.  In *Environmental Defense Fund*, for example, the agency had not ruled on a petition *at all*, yet this Court held that there was final agency action because the inaction had "precisely the same impact on the rights of the parties as denial of relief."  428 F.2d at 1098-1099.  Again, the question is whether the agency's actions suggest that it has "made up its mind," and whether legal rights are thereby decided.  *Friedman*, 842 F.3d at 543.  Here, the robust administrative record, painstaking delay, and lack of any conceivable use for a hearing refute the Commission's claim that this hearing is "merely investigatory."  Mot. 9.

14

Finally, the "exigent circumstances" and "irreparable injury" here are precisely the kind that motivated this Court long ago to declare that an agency's "failure to act  * * *  [can be] equivalent to a final denial" of action. *Environmental Defense Fund*, 428 F.2d 1098-1099.  Contrary to the Commission's claim (Mot. 10-11) that the broadcasters "fail entirely to explain why [the May 22] deadline cannot be revised or renegotiated," the broadcasters have already spelled out why the financing that made the transaction possible—which it was able to lock down for over 14 months—can no longer be replicated in today's high-interest rate environment.  See Mot. to Expedite 7.  And if Standard General cannot close the transactions, it will face a $136 million termination fee.  Mandamus Add. 21, 98-99.  This is absolutely "different in kind and legal effect" from "the mere denial of a procedural advantage" or the ordinary burdens of "additional administrative proceedings," Mot. to Dismiss at 11 (citing *National Ass'n of Home Builders*, 417 F.3d at 1279), and it is why the broadcasters have been up front with the Commission since day one that May 22 was the ultimate drop-dead date for the transaction.  The Commission cannot now call the problem one of the broadcasters' own making.

15

## II.    The Hearing Order Is An Appealable Decision Or Order Of The Commission

Resisting the clear import of these practical and context-driven finality principles, the Commission contends that the order is non-final because it was the *Media Bureau* that issued the Hearing Order that doomed the broadcasters' applications.  That order cannot be final, the Commission insists (Mot. 6-8), because it was not formally entered by the Commission itself.  That is merely a warmed-over version of the FCC's same mistaken arguments about finality and fails for the same reasons.

A.    An agency's "failure to act" can be "equivalent to a final denial" for finality purposes when inaction has "the same impact on the rights of the parties as denial of relief."  *Environmental Defense Fund*, 428 F.2d at 1098-1099.  Thus, even in "the absence of a formal statement" from *any* FCC officer, its "inaction may represent effectively final agency action."  *Her Majesty the Queen in Right of Ontario*, 912 F.2d at 1531 (citation omitted); cf. *Sackett* v. *EPA*, 566 U.S. 120, 126 (2012) (acknowledging that the APA defines "agency action" as "including even a 'failure to act'" (citation omitted)).  Inaction by the Commission as a whole thus could constitute final, reviewable agency action.

16

Here, the Commission's choice not to countermand a decision of its own component merely makes the case for final agency action more straightforward. The Media Bureau, acting on delegated authority—*i.e.*, acting *on behalf of* the Commission—chose after 11 months to send the matter to a hearing that all (but the intervenors) agree will mean the deal's death. The Commission had multiple mechanisms to overturn that Bureau decision, all of which the broadcasters invoked. Mandamus Add. 1043-1044 (requesting review under 47 C.F.R. § 1.115 and § 1.117). The broadcasters specifically explained that, in light of the impending May 22 deadline for consummation, they would seek judicial review of the Hearing Order by March 27 (the statutory deadline to notice an appeal). Mandamus Add. 1044. But the Commission never moved a muscle. Through that silence, the Commission itself "has made clear it will not act on [the] application[s]" by May 22. *Friedman*, 841 F.3d at 543. This Court's settled finality precedent thus precludes the agency's substantively identical but nominally distinct claim that the wrong actor acted.

The Commission's invocation of the language in 47 U.S.C. § 402(b) that an appeal be from a "decisio[n] [or] orde[r] of the Commission" is the

same point in statutory garb and fails for all the same reasons. The Communications Act obligates "the Commission" with adjudicating license-transfer applications. *Id.* § 309(a), (d), (e). The Commission, not Congress, chose to subdelegate that authority to the Media Bureau, *see* 47 C.F.R. §§ 0.61(a), 0.283, which issued the Hearing Order on the Commission's behalf. Notice of Appeal, Ex. A. The Commission may delegate its authority internally (subject to constitutional constraints—such as those that preclude its ALJ from presiding here). But, unless it reviews those subordinates' actions, it must *own* what those delegees do on the FCC's behalf.

The Commission here has allowed the Media Bureau's order to stand in for an order of the full Commission, in the face of urgent pleas to overturn that procedural directive. There is accordingly no basis to foreclose an appeal under Section 402(b). This Court has held that the actions "of a subordinate agency official" with "authority to speak for" the agency can "be considered final action by" the agency head when coupled with top-line "administrative inaction [that] has the same impact on the rights of the parties as an express denial of relief." *Her Majesty the Queen*

18

*in Right of Ontario*, 912 F.2d at 1531-1532.  That is precisely the circumstance here, especially where the broadcasters have urged the FCC to intervene and explained the stakes and time sensitivity, yet the Commission has elected to take no further action and let the Bureau's order stand.

B.    The authorities cited by the Commission are makeweights. *Richman Brothers Records, Inc.* v. *FCC*, 124 F.3d 1302, 1303 (D.C. Cir. 1997), and *NTCH, Inc.* v. *FCC*, 877 F.3d 408, 414 (D.C. Cir. 2017), reflect the uncontroversial proposition that a party must exhaust administrative remedies by filing an application for review with the Commission before seeking judicial review.  See 47 U.S.C. § 155(c)(7).  The broadcasters have satisfied that requirement.

*International Telecard Ass'n* v. *FCC*, 166 F.3d 387 (D.C. Cir. 1999), simply explains the unremarkable corollary of that principle: an aggrieved party cannot automatically jump to court just because it has *filed* a request for review with the Commission.  *Id.* at 388.  When the Commission is actively reviewing a Bureau decision, immediate Article III review is "premature" if the decision "has not been adopted by the Commission itself."  *Ibid.* (citation omitted).  As this Court later explained in

*Environmentel, LLC* v. *FCC*, 661 F.3d 80 (D.C. Cir. 2011), the Commission at least must be given some reasonable "opportunity to review the [bureau] decision before this Court considers it." *Id.* at 83-84.

No one doubts that the Commission must have the chance to act on a request for its inaction to constitute a denial. But here there is no serious question that the Commission has been given that opportunity—and, through its silence, made clear that the agency is content to adopt the Media Bureau's decision to allow the deal to die. The Commission cannot claim that it needs additional time to consider the applications; it has had ample time (well over a year) already. Nor can it offer the broadcasters a heads-I-win, tails-you-lose proposition—under which the Hearing Order remains non-final and non-appealable until after the deal expires. The Commission's inaction reflects that it accepts the outcome that the Media Bureau's procedural order foreordains—and that it acquiesces in the unlawful ALJ hearing that the Bureau has ordered, which cannot conclude in time.

The Commission's contrary position has breathtaking implications. The logical import of the Commission's argument is that, so long as the "full Commission" never "rules on an application for review," then *any*

20

appeal "is incurably premature" and must accordingly be dismissed.  Mot. 7.  That cannot be the law.  And indeed this Court has confirmed that it has never been the law, at least since the APA's enactment.  That the particular expedient the Commission has chosen to kill the broadcasters' deal are covert, rather than overt, does not permit it to escape this Court's review.  *Environmental Defense Fund, Inc.*, 428 F.2d at 1099.

## CONCLUSION

This Court should deny the motion to dismiss or alternatively refer the motion to the merits panel assigned to this case.

March 30, 2023

Kevin F. King
Jennifer A. Johnson
Jocelyn G. Jezierny
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C.  20001
(202) 662-6000

*Counsel for Appellant*
*TEGNA Inc.*

David E. Mills
Michael D. Basile
Henry H. Wendel
COOLEY LLP
1299 Pennsylvania Avenue, N.W.
Suite 700
Washington, D.C.  20004
(202) 842-7800

*Counsel for Appellant*
*CMG Media Corporation*

Respectfully submitted,

  */s/ Miguel A. Estrada*
Miguel A. Estrada
*Counsel of Record*
Jonathan C. Bond
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
mestrada@gibsondunn.com

Stephen J. Hammer
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX  75201
(214) 698-3100

Scott R. Flick
Jessica T. Nyman
PILLSBURY WINTHROP
  SHAW PITTMAN LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036
(202) 638-8000

*Counsel for Appellant*
*SGCI Holdings III LLC*

22

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned certifies that this response complies with the applicable typeface, type style, and type-volume limitations.  This response was prepared using a proportionally spaced type (New Century Schoolbook, 14 point).  Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), this response contains 4,084 words.  This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this response.

March 30, 2023

Respectfully submitted,

_/s/ Miguel A. Estrada_
Miguel A. Estrada
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
mestrada@gibsondunn.com

## CERTIFICATE OF SERVICE

I hereby certify that, on March 30, 2023, I electronically filed the foregoing response with the Clerk for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that I have caused the foregoing response to be hand-delivered in hard copy to the Clerk's Office of the United States Court of Appeals for the District of Columbia Circuit.

March 30, 2023

Respectfully submitted,

_/s/ Miguel A. Estrada_
Miguel A. Estrada
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
mestrada@gibsondunn.com